IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>ERICA MONTGOMERY,<br>SANDRA ANDERSON,<br>LEO FRANK THOMAS,<br>YOLANDA BROWN THOMAS, and<br>KRISTINA PARKER,<br><br>DEFENDANTS. | Case No. 4:20-cr 32-CDL-MSH<br><br>Violations:<br>Conspiracy, 18 U.S.C. § 1349<br>Wire Fraud, 18 U.S.C. § 1343<br>Financial Aid Fraud, 20 U.S.C. § 1097<br>Aiding and Abetting, 18 U.S.C. § 2<br>Forfeiture, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)<br><br>**FIRST SUPERSEDING INDICTMENT** |

THE GRAND JURY CHARGES:

At all times relevant to this First Superseding Indictment:

## GENERAL ALLEGATIONS

A.   <u>Relevant Entities</u>

1.   <u>Apex School of Theology</u>.  Apex School of Theology was a school based in Durham, North Carolina (hereinafter referred to as "Apex Main") with satellite learning centers located in various other states which facilitated Apex Main's distance education programs.  Apex Main and its satellite learning centers offered various degrees in religious theology and practice including Associate's, Bachelor's, Master's, and PhD programs.  The satellite learning centers also offered in-person classes for students to attend in addition to their remote learning.

1

2. <u>Apex Columbus Center</u>. One of the satellite learning centers for Apex Main was the Georgia/Alabama Learning Center, which was located in Columbus, Georgia (hereinafter the "Apex Columbus Center"). The Apex Columbus Center serviced the Georgia, Alabama, and Florida region. Admission as a student at the Apex Columbus Center required the same materials as at Apex Main: an application, application fee, letters of reference, a spiritual autobiography, and a health form.

3. <u>Populi, Inc.:</u> Populi, Inc. was a software company which sold and maintained software of the same name. The software was used over the Internet with a web browser and could be accessed at any computer. Through the Populi software, Apex's Columbus Center accepted homework, administered tests, posted assignments, managed classes for student transcripts, maintained grade point averages, provided online chats, and otherwise tracked the student's academic progress. Each student had a username and password to access the software. Apex Columbus Center instructors had their own usernames and passwords to post assignments and grades. Populi kept all data on servers located in a centralized location in Michigan. Prior to using the Populi software system, Apex Columbus Center used Blackboard, another web-based software, to perform the same functions.

B.     Defendants

4.     **ERICA MONTGOMERY** (a.k.a. "Erica Dillon") was a resident of Columbus, Georgia and owned and managed Dylon Tax Service, a tax preparation service. She recruited students for the Apex Columbus Center, including through her tax preparation service.

5.     **SANDRA ANDERSON** was a resident of Columbus, Georgia. She was the Director of Apex Columbus Center.

6.     **LEO FRANK THOMAS** was a resident of Columbus, Georgia. He was an instructor at Apex Columbus Center. He was married to Defendant YOLANDA BROWN THOMAS.

7.     **YOLANDA BROWN THOMAS** was a resident of Columbus, Georgia. She was an instructor at Apex Columbus Center. She was married to Defendant LEO FRANK THOMAS.

8.     **KRISTINA PARKER** was a resident of Phenix City, Alabama. She was an administrative assistant at Apex Columbus Center.

C.     U.S. Department of Education Financial Aid Programs

9.     The U.S. Department of Education ("DOE") was a department and agency of the United States responsible for, among other things, the management, oversight, and distribution of federal student financial aid funds.

10.    "Title IV Funds" referred to federal funds provided or insured pursuant to Title IV of the Higher Education Act of 1965 as amended. "Title IV Programs" referred to the

student financial assistance programs authorized under Title IV of the Higher Education Act of 1965 as amended.

11. The Federal Pell Grant Program was a Title IV Program that provided funding to assist eligible students to meet the costs of post-secondary education. Eligibility was based primarily on financial need. Students were not required to pay back grants disbursed under the Federal Pell Grant Program.

12. The Federal Direct Loan program ("FDLP") was a Title IV Program. Under FDLP, the federal government lent money to eligible students to meet the costs of post-secondary education. The FDLP included Direct Subsidized Stafford Loans, Direct Unsubsidized Stafford Loans, Direct PLUS Loans, and Direct Consolidation Loans. Students were required to pay back loans disbursed under the FDLP.

13. Apex Main was a post-secondary education institution that participated in the Title IV Programs administered by DOE.

14. DOE regulations specified eligibility and application procedures for students applying for Title IV Funds. To apply for Title IV Funds, a student at Apex Columbus Center was required to complete and sign a student aid application called the Free Application for Federal Student Aid ("FAFSA"). The FAFSA required the student to disclose factors affecting eligibility, including, but not limited to, student income, household size, and dependency.

15. DOE regulations further required each school to have a satisfactory academic progress policy. If a student did not maintain satisfactory academic progress, he/she would

have become ineligible to receive federal financial aid. One of the mandated components of this policy was the achievement and maintenance of a certain grade point average.

16. To apply for financial aid, student applicants were required to submit a FAFSA to DOE. The FAFSA application was signed and submitted electronically. On the signature page, the student was required to certify that he/she was the applicant and that the federal aid funds would only be used to pay the cost of attending the institution. The FAFSA form also warned the applicant that purposely giving false or misleading information could subject the applicant to criminal penalties. Each FAFSA covered an academic year starting July 1 and ending June 30 of the following year. A new FAFSA was required for each new academic year and had to be signed by the Applicant.

17. Once each FAFSA was processed, Apex Main (or its designee) determined how much financial aid each student was qualified to receive (the "FAFSA awarded amount"). Apex Main then electronically applied for disbursement of funds from DOE. Once approved by DOE, Apex Main was entitled to draw down the funds into its bank account at different times through the academic year.

18. Apex Main disbursed Title IV funds by crediting the student's account for the FAFSA awarded amount. If the FAFSA awarded amount exceeded the amount of tuition and fees, room and board, and other authorized charges the school assessed the student, Apex Main was required to pay the resulting credit balance (commonly in the form of a "refund check") directly to the student or parent as soon as possible, but no later than 14 days after the credit balance occurred. Apex Main mailed these checks to the students'

addresses as listed on the FAFSA or to another location, if requested in writing by the student. These refund checks could be used only for educational purposes.

## COUNT ONE
## (18 U.S.C. § 1349)
## Conspiracy

19. From in or around August 2010 continuing until in or around May 2018, in the Middle District of Georgia and elsewhere,

**ERICA MONTGOMERY,
SANDRA ANDERSON,
LEO FRANK THOMAS,
YOLANDA BROWN THOMAS, and
KRISTINA PARKER,**

Defendants herein, did conspire with each other, as well as others known and unknown to the Grand Jury, to commit the following offense against the United States, to wit: wire fraud, that is, to knowingly, and with the intent to defraud, devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

20. It was the purpose of the conspiracy for Defendants and others to unlawfully enrich themselves by: (1) submitting and causing to be submitted false and fraudulent FAFSA

applications to DOE for students who did not qualify and for students who never intended to actually enroll as students at the Apex Columbus Center; (2) obtaining portions of the students' financial aid for their own use and to pay others to further the conspiracy; and (3) concealing and causing the concealment of these false and fraudulent FAFSA applications.

### Manner and Means of the Conspiracy

21. It was part of the conspiracy that Defendants, and others, actively sought out people whom they could enroll at the Apex Columbus Center as students, knowing that they were not qualified to enroll or that the individuals had no intention of becoming students.

22. It was further part of the conspiracy that Defendants, and others, used the personal identifying information of these "students" to impersonate the students as part of the application process, or assisted the "students" in filing falsified applications.

23. It was further part of the conspiracy that, in order to gain admission for students at the Apex Columbus Center, Defendants, and others, falsified application materials for the "students," including: an application form, a high school transcript or GED, letters of reference, and a writing sample called a spiritual autobiography.

24. It was further part of the conspiracy that after Apex Main admitted individuals as students at Apex Columbus Center, Defendants, and others, created false and fraudulent FAFSA applications to obtain federal financial aid for each student.

25. It was further part of the conspiracy that Defendants, and others, created email addresses in the students' names in order to impersonate the students while communicating

with DOE and Apex Main, including about their financial aid.

26. It was further part of the conspiracy that to obtain access to financial aid funds, Defendants, and others, submitted and caused to be submitted false and fraudulent requests to Apex Main to mail their refund checks to Apex Columbus Center rather than to the students directly, as was standard practice.

27. It was further part of the conspiracy that for students who continued to receive their refund checks directly, upon receipt, students were required to cash their refund checks and provide a portion of those funds to certain Defendants.

28. It was further part of the conspiracy that to make it appear that Apex Columbus Center students were legitimate, Defendants, and others, impersonated students. This included creating student usernames and passwords and then falsifying student attendance, posting messages and comments as required by instructors, and completing and submitting the students' purported homework and exams.

29. It was further part of the conspiracy that to make it appear that Apex Columbus Center was operating legitimately, Defendants, and others, impersonated teachers. This included creating teacher usernames and passwords and inputting fabricated assignments and grades, making it appear that students were succeeding in their classes.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH SIX
### (18 U.S.C. § 1343)
### Wire Fraud

30. Paragraphs 1 through 18 are incorporated herein.

31. From in or around August 2010 continuing until in or around May 2018, in the Middle District of Georgia, and elsewhere,

> ERICA MONTGOMERY,
> SANDRA ANDERSON,
> LEO FRANK THOMAS,
> YOLANDA BROWN THOMAS, and
> KRISTINA PARKER,

Defendants herein, aided and abetted by each other, as well as others known and unknown to the Grand Jury, knowingly, and with the intent to defraud, devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, as described below, each transmission constituting a separate count:

| Count | Approx. Date | Description of Wire Transmission |
|---|---|---|
| 2 | Dec. 10, 2017 | Electronic submission of final exam for student D.R. from IP address 24.96.238.220 in Georgia to Populi servers in Michigan |
| 3 | Feb. 3, 2018 | Electronic submission of a homework assignment for student A.R from IP address 24.236.66.75 in Georgia to Populi servers in Michigan |
| 4 | Feb. 3, 2018 | Electronic submission of a midterm for student C.S. from IP address 24.236.66.75 in Georgia to Populi servers in Michigan |
| 5 | Feb. 16, 2018 | Electronic transmission of a homework assignment for student D.B. from IP address 24.236.66.75 in Georgia to Populi servers in Michigan |

| 6 | Apr. 8, 2018 | Electronic transmission of the midterm for student F.A. from IP address 24.236.66.75 in Georgia to Populi servers in Michigan |

All in violation of Title 18, United States Code, Section 1343 and 2(a).

## COUNTS SEVEN THROUGH TEN
## (20 U.S.C. § 1097(a))
## Financial Aid Fraud

32. Paragraphs 1 through 18 are incorporated herein.

33. From in or around August 2010 continuing until in or around May 2018, in the Middle District of Georgia, and elsewhere,

ERICA MONTGOMERY,
SANDRA ANDERSON,
LEO FRANK THOMAS,
YOLANDA BROWN THOMAS, and
KRISTINA PARKER,

Defendants herein, did knowingly and willfully embezzle, misapply, steal, obtain by fraud, false statement, and forgery, and fail to refund any funds, assets, and property provided and insured under Title 20, Chapter 28, Subchapter IV of the United States Code, and Title 42, Chapter 34, Subchapter I, Part C, of the United States Code, and did attempt to so embezzle, misapply, steal, obtain by fraud, false statement, and forgery, and fail to refund any funds, assets or property, provided and insured under Title 20, Chapter 28, Subchapter IV of the United States Code, and Title 42, Chapter 34, Subchapter I, Part C, of the United States Code, in an amount exceeding $200, in that, Defendants applied for, and aided and abetted others in applying for, and obtaining Pell grants and Federal Direct Program Loans in the

amounts and on behalf of the students set forth below, when, in fact, as Defendants well knew, the students had no intention of using those loan funds for educational purposes, as required.

| Count | Approx. FAFSA Submission Date | Student | School Year | Approx. Financial Aid Amount |
|---|---|---|---|---|
| 7 | July 6, 2016 | C.S. | 2016-2017 | $ 11,796.00 |
| 8 | Aug. 5, 2016 | D.R. | 2016-2017 | $ 11,796.00 |
| 9 | Aug. 10, 2016 | Q.W. | 2016-2017 | $ 11,796.00 |
| 10 | Apr. 4, 2017 | C.S. | 2017-2018 | $ 11,796.00 |

All in violation of Title 20, United States Code, Section 1097(a) and Title 18, United States Code, Section 2(a).

## FORFEITURE NOTICE
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) - Criminal Forfeiture)

1. The Grand Jury further alleges that:

2. Upon conviction of any violation of Title 18, United States Code, Sections 1349 and 1343, as alleged in the First Superseding Indictment,

> ERICA MONTGOMERY,
> SANDRA ANDERSON,
> LEO FRANK THOMAS,
> YOLANDA BROWN THOMAS, and
> KRISTINA PARKER,

Defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds traceable to the aforementioned violation(s), or a conspiracy to commit such offense.

3. If any of the property subject to forfeiture, as a result of any act or omission of Defendant(s):

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), through Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL.

*s/ Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

LORINDA LARYEA
Acting Chief, Fraud Section
U.S. Department of Justice

PETER D. LEARY
United States Attorney

Presented by:

LESLIE S. GARTHWAITE
Assistant Chief
MATTHEW KAHN
Trial Attorney
U.S. Department of Justice
Criminal Division

Filed in open court this 15th day of June, AD 2022.

Vanessa Viaca
Deputy Clerk