```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| vs. | * | |
| ERICA MONTGOMERY, | * | CASE NO. 4:20-CR-32 (CDL) |
| Defendant. | * | |

O R D E R

Presently pending before the Court are Defendant Erica Montgomery's motions to suppress. As discussed below, those motions (ECF Nos. 183 & 184) are denied.

**I.  First Motion to Suppress (ECF No. 183)**

Montgomery asks the Court to suppress all evidence seized by law enforcement officers from her office on April 26, 2017 pursuant to a search warrant issued by Magistrate Judge M. Stephen Hyles on April 20, 2017. Montgomery contends that the search warrant was not supported by probable cause and was unconstitutionally overbroad.

A.  The Office Search Warrant Affidavit

Internal Revenue Service Special Agent Michael Tucker applied for and received a warrant to search Montgomery's office in relation to suspected wire fraud and related offenses. Tucker Warrant Appl. (Apr. 20, 2017), ECF No. 1 in 4:17-mj-45. The 52-paragraph affidavit attached to the application stated

that Tucker was investigating "tax fraud involving the filing of fraudulent Federal income tax returns" for the years 2010 to 2016 and "fraud involving Federal student loans and Federal Pell Grants" for the years 2010 to 2017.  Tucker Aff. ¶ 18, ECF No. 1-1 in 4:17-mj-45.  The investigation began when the U.S. Department of Education's Office of Inspector General received a complaint that Montgomery, who was doing business as Dylon Tax Service located at 1501 13th Street, Suite T, Columbus, GA 31901, had been filing fraudulent federal student loan and Pell grant applications connected with Apex School of Theology.  *Id.* ¶¶ 19-20.  Government agents collected documents and interviewed a number of witnesses.  Based on the investigation, Agent Tucker concluded that there was probable cause to believe that several crimes related to fraudulent student aid applications were being committed and that there was probable cause to search Montgomery's office for evidence and fruits of the crimes.  *Id.* ¶¶ 4, 17-19.

According to Agent Tucker, several witnesses stated either that they participated with Montgomery in applying for student aid to attend Apex online even though they were not going to complete courses OR that their personal information was used for a fraudulent federal student aid application ("FAFSA") without their consent.  *Id.* ¶¶ 20-33.  In some cases, money was disbursed to addresses for real estate owned by Montgomery,

2

which had been listed as the student's address on a FAFSA. *Id.* ¶¶ 24-26. The FAFSAs were submitted using IP addresses assigned to Dylon Tax Service and/or IP addresses that had been used by Dylon Tax Service to file tax returns. *Id.* ¶¶ 27-28, 30, 33-36. FAFSAs for 233 students were filed through IP addresses that were assigned to Dylon Tax Service and also used by Dylon Tax Service to file tax returns. *Id.* ¶¶ 34-37. Tax returns filed under Montgomery's electronic filing identification number included a significant number of education credits, and the business address associated with Montgomery's electronic filing identification number and her 2014 and 2015 tax returns was the Dylon Tax Service office, 1501 13th Street, Columbus, GA 31901. *Id.* ¶¶ 38-40. More than 100 financial aid checks from Apex were cashed at Wild Bill's Pawn shop, and another 16 were cashed at Big O's Package Store. There was a kickback to the Big O's employee who cashed the check and a Wild Bill's employee stated that Montgomery drove people to Wild Bill's to cash their checks. *Id.* ¶¶ 41-43.

Based on this evidence from the witnesses and the records, Agent Tucker stated that "this pattern of activity is indicative of the filing of false tax returns and fraud involving Federal student loans and Federal Pell Grants using co-conspirators and stolen identities." *Id.* ¶ 44. And based on the records from the IRS, Montgomery's internet service provider, and the

3

Department of Education, Agent Tucker stated that there was probable cause to believe that Erica Montgomery operated Dylon Tax Service at 1501 13th Street, Suite T, Columbus, GA 31901 and that the IP addresses associated with some of the fraudulent FAFSAs were assigned to Dylon Tax Service at 1501 13th Street. *Id.* ¶ 45. Agent Tucker explained that individuals involved in false refund schemes typically keep evidence about the transactions in their place of business. *Id.* ¶ 46. Agent Tucker also gave a list of reasons why it would be necessary to search computers and electronic storage—mainly that the computers and other electronic devices (like smart phones and data security devices) are the instrumentality of the crime and storage for evidence of the crime. *Id.* ¶¶ 47-51.

B. <u>Analysis</u>

Montgomery summarily argues that the facts described in the warrant did not provide the Magistrate with a substantial basis to determine that probable cause existed for the search warrant. "Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Carroll*, 886 F.3d 1347, 1351 (11th Cir. 2018) (alterations adopted) (quoting *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam)). The evidence contained in the affidavit supported the

4

conclusion that evidence of wire fraud and federal student financial aid fraud would be found at Montgomery's place of business and on the computers and electronic devices located in the office.  The affiant had more than seventeen years of experience as a special agent with the IRS and was specially trained in financial and criminal investigation techniques.  The affidavit explained how several federal student financial aid programs are administered, summarized witness interviews and documents linking Montgomery and/or her place of business to student loan applications, and explained why the pattern of activity described in the affidavit is indicative of the filing of false tax returns and fraudulent federal student financial aid applications via the internet.  The evidence and testimony contained in the affidavit supported a finding of probable cause.

Montgomery also summarily argues that the warrant was overly broad and did not satisfy the Fourth Amendment's particularity requirement.  The Fourth Amendment requires a warrant to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  So, a search warrant that "'fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally over broad,' and any evidence seized from the resulting search must be excluded from trial." *Carroll*, 886 F.3d

5

at 1351 (quoting *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000)). "While a search warrant must contain sufficient specificity to guard against a general search, 'the test is the reasonableness of the description. Elaborate specificity is unnecessary.'" *Id.* (quoting *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982)).

Montgomery does not appear to dispute that the warrant adequately described the place to be searched: "Dylon Tax Service located at 1501 13th Street, Suite T, Columbus, Georgia 31901, including any computer and cell phones on the property". Tucker Warrant Appl. Attach. A (incorporated into the search warrant). The warrant also describes the property's color and signage, states where the entrance is, and provides photographs. This description is sufficiently particular.

Montgomery does argue that the warrant was not sufficiently particular because it did not adequately limit the things to be seized.[1] The warrant incorporated Attachment B to the search

---

[1] Montgomery cited two cases in support of her motion, but the holdings do not support her argument. In *United States v. Wuagneux*, 683 F.2d 1343 (11th Cir. 1982), the Eleventh Circuit affirmed the denial of a motion to suppress in a bank fraud/false tax return case. In *Wuagneux*, the warrant called for the seizure of eleven categories of records, and the Eleventh Circuit noted that white collar crime investigation is a "paper puzzle" from lots of "seemingly innocuous pieces of individual evidence." *Id.* at 1349. The court continued: "It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Id.* Montgomery's other case,

6

warrant application, which describes sixteen categories of items to be seized, including computer hardware and electronic storage devices used as an instrumentality or containing evidence of federal student financial aid fraud. The warrant is admittedly broad, but that does not mean that it is constitutionally infirm.

Montgomery's main argument seems to be that the warrant was overly broad because it permitted the seizure of computers, smart phones, and electronic data storage devices. The warrant did state that such items were to be seized if they were used as an instrumentality or contained evidence of the stated offenses, and the Eleventh Circuit has upheld the seizure of computers and related storage devices if they might contain evidence of the alleged crimes. *See, e.g., Carroll*, 886 F.3d at 1352 (upholding "the seizure of computers, related storage devices, and other media which might contain evidence of child pornography").

Montgomery also suggests that the warrant was overly broad because it permitted seizure of all of her company's financial records, as well as all client records. But the particularity requirement "is applied with 'a practical margin of flexibility,'" especially in complex fraud cases. *United States*

---

*United States v. Travers*, 233 F.3d 1327 (11th Cir. 2000) was a complex financial fraud case. While the district court had concluded that the warrant was overly broad (although it was a "close call"), the warrant was not "so facially deficient . . . that the executing officers could not have reasonably presumed it to be valid"—which meant that the good faith exception to the exclusionary rule could apply. *Id.* at 1330.

7

*v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011) (quoting *Wuagneux*, 683 F.2d at 1349). In *Bradley*, for example, the Defendants were accused of a Medicaid fraud scheme involving numerous individuals and multiple transactions. The Eleventh Circuit upheld a search warrant that effectively allowed seizure of "all personal and business files relating to" a corporate defendant's wholesale business for six years. *Id.* at 1258. The Eleventh Circuit applied the "pervasive fraud" doctrine because evidence of the fraud was "likely to be found in a broad spectrum of the defendant company's business records." *Id.* at 1260. Similarly, in *United States v. Martinelli*, the Eleventh Circuit upheld a search warrant that permitted seizure of all of a defendant's business files, where the defendant was accused of a pervasive scheme to defraud at least twenty-five customers by fraudulently taking money from them without providing them any services. 454 F.3d 1300, 1308 (11th Cir. 2006).

Here, the search warrant affidavit described in detail the alleged scheme to file false tax returns and submit fraudulent Federal student financial aid applications using co-conspirators and stolen identities. Among other things, the affidavit stated that several witnesses described the Federal student financial aid fraud; more than two hundred Federal financial aid applications were submitted using IP addresses that were assigned to and/or used by Dylon Tax Service between January

8

2014 and January 2017; more than 100 Apex checks were cashed at a pawn shop; and Montgomery often drove people to cash their checks at the pawn shop. The Court is satisfied that the warrant was not overbroad.[2] Accordingly, the Court denies Montgomery's motion to suppress the evidence seized pursuant to the office search warrant (ECF No. 183).

**II.  Second Motion to Suppress (ECF No. 184)**

In addition to her motion to suppress evidence seized pursuant to the office search warrant, Montgomery asks the Court to suppress all evidence seized by law enforcement officers from her Yahoo account (efmonty531@yahoo.com) pursuant to a search warrant issued by Judge Hyles on January 23, 2018. Montgomery argues that the email search warrant was not supported by probable cause and was unconstitutionally overbroad.

A.  The Email Search Warrant Affidavit

Montgomery had a Yahoo email account: efmonty531@yahoo.com. FBI Special Agent Kate Furtak applied for and received a search warrant to obtain certain email information from Yahoo. The 69-paragraph affidavit attached to the application stated that

---

[2] The Government argues that even if the warrant was overbroad, the good faith exception to the exclusionary rule applies. *See United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021) (explaining the good faith exception). The Court agrees. There is no contention that the Magistrate was misled by false information in the affidavit or that the issuing Magistrate abandoned his judicial role. As discussed above, the warrant contains sufficient indicia of probable cause. And the warrant is not so facially deficient that the executing officers could not reasonably have presumed it to be valid.

Furtak was investigating "fraud involving Federal student loans and Federal Pell Grants" and "tax fraud involving the filing of fraudulent Federal income tax returns" for the years 2010 to 2017.  Furtak Aff. ¶ 19, ECF No. 1-1 in 4:18-mj-10.  Agent Furtak's affidavit repeats the information from Agent Tucker's affidavit regarding the investigation of the alleged scheme to defraud the Government—evidence about the witness interviews, the document reviews, the student financial aid applications and tax returns filed using IP addresses associated with Dylon Tax Service, and where/how the money was disbursed.  Furtak Aff. ¶¶ 19-35, 49-57.   In addition, the affidavit links the efmonty531@yahoo.com account to Montgomery in several ways: an email address for registration as a tax preparer in New York, user account for two government websites, contact method for insurance, and email address for a magazine subsrciption.  *Id.* ¶¶ 44-47.  The affidavit also states that efmonty531@yahoo.com was used as the email address on FAFSAs for fifty students— including one of the witnesses who had been interviewed by the agents.  *Id.* ¶¶ 32, 48.

Based on the evidence from the witnesses and the records, Agent Furtak concluded that there was probable cause to believe that several crimes related to fraudulent student aid applications were being committed and that there was probable cause to search Montgomery's Yahoo account for evidence and

10

fruits of the crimes. *Id.* ¶¶ 4-5, 19-20. She stated that Montgomery obtained personal identifying information "of knowing and unknowing individuals to apply for and fraudulently obtain Federal student loans and Federal Pell Grants" and then submitted tax returns through her business fraudulently claiming education tax credits. *Id.* ¶ 20. And based on the records from the IRS, Montgomery's ISP, the Department of Education, and documents seized pursuant to the office search warrant, Agent Furtak linked the efmonty531@yahoo.com account to the alleged tax credit/financial aid fraud scheme. Agent Furtak explained that Yahoo's computers likely contained stored electronic communications and other subscriber information that might have been deleted from or might not be stored on a Yahoo subscriber's own computer. *Id.* ¶¶ 59-63.

    B.   <u>Analysis</u>

Montgomery summarily argues that the warrant to search her Yahoo account was not supported by probable cause. But, like the affidavit for the office search warrant, the evidence in Furtak's affidavit supported the conclusion that evidence of Federal student financial aid fraud would be found in the Yahoo account. The affiant had several years of experience as an FBI special agent. She holds a Juris Doctorate and was specially trained in financial and criminal investigation techniques. In the affidavit, Agent Furtak explained how several federal

11

student financial aid programs are administered; summarized witness interviews and documents linking Montgomery and/or her place of business to student loan applications and tax returns; and explained how the efmonty531@yahoo.com account was linked to Montgomery, her place of business, and the alleged fraudulent schemes. Thus, the evidence and testimony contained in the affidavit supported a finding of probable cause that a search of the efmonty531@yahoo.com account would reveal evidence of the alleged fraudulent schemes.

Montgomery also argues that the email search warrant was overly broad and did not meet the Fourth Amendment's particularity requirement. Her main argument is that the warrant did not provide adequate guidelines for identifying and separating the emails within the scope of the warrant from those outside the scope. The warrant requires Yahoo to *disclose* the contents of "all e-mails associated with the account," as well as records regarding the identification of the account (including the full name, physical address, telephone numbers, and IP addresses). Furtak Warrant Appl. Attach. B (incorporated into the search warrant). The warrant states that the Government may only *seize* data since January 1, 2011 "that constitutes fruits, evidence, and instrumentalities" of violations of specific sections of federal law, including "Records and communications regarding the transmission of

12

personally identifiable information, tax returns, prepaid debit cards, the proceeds of the transfer or use of personally identifiable information, and a conspiracy to file false tax returns using stolen identities" and records regarding property derived from proceeds of the conspiracy. *Id.*

Federal Rule of Criminal Procedure Rule 41(e)(2)(B) states that a warrant "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information." Fed. R. Crim. P. 41(e)(2)(B). "Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant." *Id.* There is no dispute that it is common practice for agents to comply with Rule 41 by using the two-step process that was used here: a "search" (warrant compels third party to provide electronic information) and a "seizure" (warrant authorizes seizure only of specified information). Here, the warrant limits the "[i]nformation to be seized" in terms of both time and scope.[3] Furtak Warrant Appl. Attach. B. A search of an email account, like a search of papers, requires some perusal to determine whether the message (or paper) is among those that officers are authorized to seize. The Court is not convinced that the process authorized by the email search warrant in this case

---

[3] The date restriction probably should have applied to limit the emails that Yahoo was required to produce, but the Court finds that the warrant is not facially invalid because of this issue given the temporal limitation in Section 2 of the warrant.

13

lacks sufficient particularity. Even if it did, the Court does not find that the email search warrant was so facially invalid that the executing officers could not have presumed it valid. *See United States v. Blake*, 868 F.3d 960, 973-75 (11th Cir. 2017) (upholding search warrant for email account where the warrant limited the scope of emails to be turned over to the government and concluding that, although the search warrant for a social media account may have been overbroad, the warrant was not so facially deficient that executing officers could not have reasonably presumed it to be valid). For these reasons, the Court denies Montgomery's motion to suppress the evidence obtained pursuant to the email search warrant (ECF No. 184).

## CONCLUSION

For the reasons set forth above, Montgomery's motions to suppress (ECF Nos. 183 & 184) are denied.

IT IS SO ORDERED, this 19th day of August, 2022.

                                        s/Clay D. Land
                                        CLAY D. LAND
                                        U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA